WMP:MKM
F.#2012R00347

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

     - against -                  12-CR-187 (CBA)

ROBERT ALEXANDER,

           Defendant.

- - - - - - - - - - - - - - - - -X

## MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S MOTIONS IN LIMINE

                                       LORETTA E. LYNCH
                                       United States Attorney
                                       Eastern District of New York

M. Kristin Mace
Assistant U.S. Attorney
(Of Counsel)

**PRELIMINARY STATEMENT**

The defendant, Robert Alexander, is charged in a one-count indictment with knowingly and intentionally possessing a firearm, having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g).

At trial, which is scheduled to commence on July 30, 2012, the government will seek to introduce the following evidence: (1) the recorded 911 call to the New York Police Department ("NYPD") on February 26, 2012, which led to the defendant's arrest (a copy of the recording and the redacted transcript are attached as Exhibits A and B, respectively)[1]; (2) the "sprint report" (attached as Exhibit C) containing information recorded by a 911 operator and broadcast over the NYPD radio leading up to and concerning the defendant's arrest; and (3) the corresponding recorded radio calls during the defendant's attempts to flee and at the time of his ultimate arrest (a copy of the recording and the transcript are attached as Exhibits D and E, respectively). For the reasons set forth below, the government respectfully submits that this evidence is admissible at trial.

The government also moves to preclude the defendant from introducing, through direct evidence or cross-examination

---

[1] The audio recording exhibits will be provided in hard-copy.

1

of the government's witnesses, the following: (1) evidence of the defendant's civil lawsuits against NYPD police officers in unrelated cases and the resulting settlements; and (2) evidence of lawsuits against Officer Lloyd Gregory in unrelated cases and the resulting settlements.

## FACTUAL BACKGROUND[2]

At approximately 5:30 a.m. on February 26, 2012, the NYPD received a 911 call in which a woman stated that there was a man with a gun threatening to hurt people at an address on Richmond Road in Staten Island, New York.  The woman described the man with a gun as a black male with braids in his hair, wearing a gray "hoodie" and black pants.  She further stated that police assistance was needed as soon as possible. Throughout the call, a heated argument, with multiple people yelling angrily, can be heard in the background.

NYPD Officers Sean Smith and Edward Murphy arrived at the address shortly thereafter and, after hearing loud arguing upstairs, found the defendant, who fit the description of the man with the gun and was wearing the hooded sweatshirt described in the 911 call.  When Officers Smith and Murphy attempted to handcuff the defendant inside the apartment, the defendant

---

[2] The government respectfully refers the Court to the government's Opposition to the Defendant's Motion to Suppress, which includes a more detailed description of the facts.  Gov.'s Opp'n, dated May 11, 2012 (Docket No. 22).

2

struggled with them, broke free, and fled from the building. Officers Smith and Murphy radioed urgently to other officers arriving on the scene, "someone's coming out, someone's gonna come out," and pursued the defendant on foot.

As Officers Lloyd Gregory and Jessi D'Ambrosio arrived in a second patrol car, they saw the defendant run across Richmond Road and up Cunard Place, an adjacent street. Officer D'Ambrosio, who was in the passenger seat, observed the defendant removing his sweatshirt as he ran. As Officers Gregory and D'Ambrosio joined the chase, Officer Gregory radioed while in pursuit: "Running up Cunard, he's up the driveway, in the backyard." After catching the defendant and struggling with him as he continued to vigorously resist arrest, the four officers ultimately were able to place handcuffs on the defendant at the back of a driveway on Cunard Place. When the defendant was finally placed in custody, an officer informed the NYPD of the arrest over the radio, while still catching his breath.

In the driveway, and not far from where the defendant was arrested, Officer Murphy recovered the sweatshirt that the defendant had been wearing inside the apartment and that Officer D'Ambrosio had seen the defendant remove. Officer Murphy felt a gun in the sweatshirt and removed it from the sweatshirt pocket.

3

The police activity that day was recorded in a "sprint report," which indicates the times when the 911 call was received, the officers were dispatched, and the defendant was arrested.

**ARGUMENT**

I. The Sprint Report, 911 Call, and Radio Transmissions Are Admissible

The sprint report, 911 call, and radio transmissions are admissible and the government intends to introduce them at trial because they are highly probative of the charged conduct. All three pieces of evidence fall within the "business record" exception to the general prohibition on hearsay evidence. Fed. R. Evid. 803(6) provides that the following items "are not excluded by the hearsay rule":

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation . . .

"Business records are made reliable by 'systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by duty to make an accurate record as part of a

4

continuing job or occupation.'" Parker v. Reda, 327 F.3d 211, 214-15 (2d Cir. 2003) (quoting Fed. R. Evid. 803(6) advisory comm. note).

Sprint reports, which are maintained in the regular course of business by 911 and NYPD radio operators, contain all of these indicia of reliability.  The same is true of the recordings of 911 calls and the radio transmissions.  "Phone logs" fall within Rule 803(6)'s hearsay exception. See United States v. Stewart, 433 F.3d 273, 316-17 (2d Cir. 2006).  Sprint reports and the fact and timing of the 911 call and radio transmissions are indistinguishable from phone logs in that they provide a record of the telephone call made to 911 and radio transmissions made by dispatchers and police officers. See, e.g., John v. Masterson, 2010 WL 1957876, at *1 (D. Conn. May 14, 2010) (unpublished opinion) ("The record of [911 telephone calls] is admissible . . . as a 'business record.'"); United States v. Harper, 2009 WL 140125, at *2 (W.D.N.Y. Jan. 20, 2009) (unpublished opinion) ("There does not seem to be any dispute here that the [911 call report] itself meets the requirements for admission as a business record . . . ."); United States v. Padilla, 1995 WL 261513, at *3 (S.D.N.Y. May 3, 1995) (unpublished opinion) ("[T]he [911] incident records qualify

5

[as] documents for admission under [the business records exception], as records of regularly conducted activity.").[3]

The statements of the 911 caller contained in the report and on the 911 tape, as well as the statements of the officers on the radio transmissions, are admissible because they are not testimonial and fall within two exceptions to the rule against hearsay. These statements are both present sense impressions and excited utterances, under Federal Rules of Evidence 803(1) and 803(2).

Statements "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" are admissible as present sense impressions, see Fed. R. Evid. 803(1), because "the contemporaneity of the event and its description limits the possibility for intentional deception or failure of memory," United States v. Jones, 299 F.3d 103, 112 (2d Cir. 2002). Similarly, statements "relating to a startling event or condition," such as a person threatening others with a gun, "made while the declarant was under the stress of excitement

---

[3] The "business record" exception also requires that the foundation for admission of a business record be established by "the testimony of the custodian or other qualified witness or by certification." Fed. R. Evid. 803(6)(D). If not stipulated to by the defendant, the government is prepared to present this evidence at trial, including through the NYPD's certification as to the sprint report and recordings. Certification, attached hereto as Exhibit F.

6

caused by the event or condition" are admissible as excited utterances, see Fed. R. Evid. 803(2), because "the excitement of the event limits the declarant's capacity to fabricate a statement and thereby offers some guarantee of its reliability." United States v. Tocco, 135 F.3d 116, 127 (2d Cir. 1998).

Statements made by individuals who call 911 to report an emergency frequently have been found to fall within both the present sense impression and the excited utterance exceptions to the hearsay rule. See, e.g., Harper, 2009 WL 140125, at *2-3; United States v. Mejia-Valez, 855 F. Supp. 607, 613-14 (E.D.N.Y. 1994); United States v. Shoup, 476 F.3d 38, 42 (1st Cir. 2007); United States v. Thomas, 453 F.3d 838, 843-44 (7th Cir. 2006); United States v. Allen, 235 F.3d 482, 493 (10th Cir. 2000).[4]

Here, in the recording of the 911 call, the caller can be heard reporting her observations during an argument in which a man fitting the defendant's description was brandishing a gun and threatening individuals at the residence. For example, the

---

[4] Admission of the statements made by 911 callers is not prohibited by the Confrontation Clause because statements "made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency" are not testimonial. Davis v. Washington, 547 U.S. 813, 822 (2006) (holding statements made by 911 caller to enable police assistance during an emergency were not testimonial because caller "was not acting as a witness" and "was not testifying") (emphasis in original). Radio transmissions are similarly non-testimonial.

7

caller provides a description of the man, explains that he is threatening people, and loud arguing is heard in the background. The tone of the caller's voice, her pleas for immediate assistance, and the loud arguing clearly demonstrate that she placed the call about an event as she "was perceiving the event," Fed. R. Evid. 803(1), and while still "under the stress of excitement caused by the event," Fed. R. Evid. 803(2).[5]

      Similarly, the officers' statements on the radio transmissions concerning the defendant's flight and arrest are also admissible. Officer Smith's call over the radio that "someone's coming out, someone's gonna coming out," was made in the heat of the pursuit, as the officers ran down the stairs after the fleeing defendant. These and later transmissions were made at the very time the officers were chasing the fleeing defendant and when they placed him under arrest, Fed. R. Evid. 803(1), and the Officers' excited yells and calls, while still catching their breath, were undoubtedly made "under the stress of excitement caused by the event," Fed. R. Evid. 803(2). Accordingly, the statements on the 911 call and in the radio

---

[5] The 911 call is admissible for the additional reason that the yelling that is heard in the background is clearly recognizable as arguing, but the actual words are indecipherable. Therefore, these "statements" will be offered not for the truth of the matter, but to provide direct – non-hearsay – evidence of the argument that took place in the apartment.

8

transmissions clearly fall within the present sense impression and excited utterance exceptions.

For these reasons, the government respectfully submits that the sprint report, the 911 call, and the radio transmissions are admissible at trial.

II. **Evidence of the Defendant's Lawsuits Against the NYPD Are Inadmissible**

In the Defendant's reply brief in further support of his motion to suppress, he claims that "the NYPD has targeted, threatened, and terrorized [him] for most of his adult life." Def.'s Reply, dated May 18, 2012 (Docket No. 23), at 7. Although he claims in the brief that "[t]his abuse has been verified," id., the only support offered is a vague reference to "successful" lawsuits against the NYPD. Id. at 8.[6] Such a general and baseless attack on the NYPD would be wholly irrelevant and unfairly prejudicial if made in the upcoming trial. Accordingly, the government moves to exclude direct or indirect evidence of any civil lawsuits by the defendant and the underlying events.

---

[6] The defendant indicated that records of these proceedings would be presented to the Court before or at the time of the suppression hearing. See Reply at 8, n. 3. By letter dated June 20, 2012, the government requested that the defendant provide documentary materials concerning defendant's prior legal actions against the NYPD, as referenced in the defendant's Reply. (Docket No. 26.) To date, these materials have not been provided.

9

To date, the government has identified two civil lawsuits by the defendant against the City of New York and police officers in the NYPD, both of which were filed in the Eastern District of New York:

a. <u>Robert Alexander v. City of New York et al.</u>, 07-CV-1880 (RJD): On May 7, 2012, Alexander filed a complaint against the City of New York and several officers of the NYPD, alleging, among other things, deprivation of civil rights, unlawful strip search and false arrest. This lawsuit was settled with respect to all parties on January 31, 2008, without any admission or finding of fault or liability on the part of the defendants. The parties, including Alexander, agreed that the settlement "shall not be admissible in, nor is it related to, any other litigation." (Stipulation and Order of Settlement and Discontinuance, dated March 3, 2008 (Docket No. 12), ¶ 4.)

b. <u>Robert Alexander v. City of New York et al.</u>, 10-CV-4855 (FB): On October 21, 2010, Alexander filed a complaint against the City of New York and several NYPD officers, alleging, among other things, deprivation of rights, false arrest and use of excessive force. This lawsuit was settled with respect to all parties on July 6, 2011, without any admission or finding of fault or liability on the part of the defendants. Alexander expressly agreed that "neither the filing of the Complaint in this action, nor the settlement of this action, shall be asserted by him or his attorney in any other litigation or proceeding as evidence of wrongful conduct on the part of the City of New York, or any present or former employees or agents of the City of New York." (Stipulation of Settlement and Order of Dismissal, dated July 6, 2011 (Docket No. 10), ¶ 4.)

None of the officers involved in the above cases played any role in the present criminal matter. In fact, there have been no substantiated complaints against any of the NYPD officers in

10

this case.  See Decl. from the New York City Civilian Complaint Review Board, dated June 19, 2012 (attached as Exhibit G). Thus, evidence concerning the existence or settlement of civil lawsuits initiated by the defendant against other NYPD officers should be excluded as wholly irrelevant.

    Federal Rule of Evidence 401 provides that evidence is only relevant when it has any tendency to make any fact that is of consequence in determining the outcome more or less probable than it would be without the evidence.  Fed. R. Evid. 401.  The above civil proceedings – and any others by the defendant not yet discovered by the government – are not relevant to the elements of the charged offense for a number of reasons.  First, as noted above, the civil proceedings do not involve any of the officers who participated in the arrest of the defendant and the underlying facts have nothing to do with the charged crime. Second, the civil suits were settled without any admission or finding of fault or liability on the part of the NYPD or the named officers.  Thus, the defendant's claim that the suits are "verifi[cation]" that he has been "targeted, threatened, and terrorized for most of his adult life" is simply false.  See Def.'s Reply, dated May 18, 2012 (Docket No. 23), at 7.  The allegations in the civil suit are no more than that – unsubstantiated allegations of no probative value.  Third, the

11

settlement agreements in the civil suits each contain a provision to which Alexander agreed, stating that the settlement would not be admissible in any other litigation. Under these circumstances, the defendant's civil suits should be excluded as irrelevant.

In addition, evidence of the civil suits should be excluded under Federal Rule of Evidence 403, which provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." To the extent the defendant's civil lawsuits have any probative value – which the government submits they do not – such value is more than substantially outweighed by the dangers of: (1) "unfair prejudice" that would result from attempting to tarnish NYPD officers generally; (2) "confusing the issues" by leading the jurors to think that the NYPD officers who testify in this case were somehow implicated in those civil lawsuits; and (3) "undue delay" and "wast[ed] time," resulting from mini trials within the trial about the facts of those unrelated cases.

For these reasons, the government respectfully requests that the defendant be precluded from introducing direct

or indirect evidence of any civil lawsuits by the defendant and the facts underlying those suits.

III. Evidence of Prior Lawsuits Against Officer Lloyd Gregory Are Inadmissible

At trial, NYPD Officer Lloyd Gregory may testify for the government. Pursuant to its obligations under Giglio v. United States, 405 U.S. 150 (1972) and Brady v. Maryland, 373 U.S. 83 (1963), and in an abundance of caution, the government now discloses information concerning certain civil actions filed against Officer Gregory in connection with his position as an NYPD police officer.

Officer Gregory has been named as a defendant in three civil lawsuits in connection with his position with the NYPD, all of which were filed in the Eastern District of New York:

a. Gambino v. City of New York, et al., 09-CV-4292 (CBA): On October 6, 2009, the plaintiff filed a complaint against Officer Gregory, the City of New York and ten unnamed officers alleging, among other things, false arrest and use of excessive force by Officer Gregory and others. This lawsuit was settled with respect to all parties on April 13, 2010, without any admission or finding of fault or liability on the part of the defendants.

b. Gaffney v. City of New York, et al., 10-CV-1192 (SLT): On March 16, 2010, the plaintiff filed a complaint against Officer Gregory, the City of New York and twelve other officers, alleging, among other things, assault, battery, use of excessive force and intentional infliction of emotional distress. This lawsuit was dismissed with prejudice as to Officer Gregory on March 1, 2012.

13

      c.    <u>Springle v. City of New York, et al.</u>, 11-CV-175 (ARR): On May 2, 2011, the plaintiff filed a complaint against Officer Gregory, the City of New York and another officer, alleging, among other things, false arrest and malicious prosecution. This lawsuit was settled with respect to all parties on July 29, 2011, without any admission or finding of fault or liability on the part of the defendants.

Direct evidence of the above lawsuits is not admissible in the upcoming trial under Federal Rules of Evidence 401 and 403, for the same reasons as set forth above in the discussion of the defendant's civil lawsuits.

In addition, the defendant should not be permitted to cross-examine Officer Gregory about these unrelated suits. "The Confrontation Clause guarantees defendants the right to cross-examine government witnesses in order to test their truthfulness and discredit the witnesses by revealing the witnesses' 'possible biases, prejudices, or ulterior motives' in relation to 'the case at hand.'" <u>United States v. Brown</u>, 2009 WL 497606, at *2 (E.D.N.Y. Feb. 26, 2009) (unpublished opinion) (quoting <u>United States v. Figueroa</u>, 548 F.3d 222, 227 (2d Cir. 2008)). Nothing in the Confrontation Clause, however, prohibits the district court from exercising its broad discretion to "impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, . . . or interrogation that is . . . only marginally relevant." <u>Id.</u> (quoting <u>Figueroa</u>, 548 F.3d at 227); <u>see</u> <u>also</u>

14

United States v Lawes, 292 F.3d 123, 131 (2d Cir. 2002) ("The scope and extent of cross-examination are generally within the sound discretion of the trial court.").

"Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." Fed. R. Evid. 611(b). Where evidence of specific acts is offered to attack a witness's character for truthfulness, its admissibility is governed by Federal Rule of Evidence 608(b). United States v. Peterson, 808 F.2d 969, 973-74 (2d Cir. 1987); see also United States v. Cruz, 894 F.2d 41, 43 (2d Cir. 1990) ("Under Rule 608(b), the court has discretion to permit or deny a line of inquiry on cross-examination.").

> Rule 608(b) provides in pertinent part:
>
> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness . . .

Admission of testimony under Rule 608(b) is limited by Federal Rule of Evidence 403, which excludes otherwise relevant evidence if its "probative value is substantially outweighed by a danger

15

of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Likewise, Federal Rule of Evidence 611 requires district courts to exercise "reasonable control" over the mode of interrogating witnesses so as to avoid "needless consumption of time" and "protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a). Thus, when considering the admission under Rule 608(b) of specific instances of conduct that the court finds probative of truthfulness, the court must balance the probative nature of the conduct against the Rule 403 and Rule 611 factors. See Brown, 2009 WL 497606, at *4. Moreover, pursuant to Rule 608(b), extrinsic evidence of a witness's prior conduct may not be admitted to attack his truthfulness. Peterson, 808 F.2d at 973-74; Brown, 2009 WL 497606, at *3.

   The civil suits filed against Officer Gregory are not relevant to the officer's character for truthfulness under Rule 608(b), as each suit has been settled or dismissed without any admission or finding of fault or liability on the part of Officer Gregory. As such, the allegations put forth by the plaintiffs in those suits are unsubstantiated and provide no basis for questioning Officer Gregory's truthfulness. Further, inquiry into these lawsuits would be unfairly prejudicial, see

16

Fed. R. Evid. 403, and subject Officer Gregory to possible harassment and undue embarrassment while eliciting evidence of no probative value. See Fed. R. Evid. 611. Therefore, this Court should preclude the defense from inquiring into these lawsuits during cross-examination.

## Conclusion

For the reasons stated above, the government respectfully requests that the Court admit into evidence at trial the sprint report and the audio recordings of the 911 call and the radio transmissions, and preclude the defendant from introducing, through direct or indirect evidence or through the cross-examination of the government's witnesses, evidence of civil lawsuits by the defendant or against Officer Lloyd Gregory.

Dated:    Brooklyn, New York
          July 13, 2012

                                    Respectfully submitted,

                                    LORETTA E. LYNCH,
                                    United States Attorney,
                                    Eastern District of New York.

                              By:      /s/
                                    M. Kristin Mace
                                    Assistant United States Attorney
                                    (718) 254-6879

17